Your Honors, if I may, Michael Eisenberg for the Appellant. I'd like to preface this conversation if I may with a reminder to the Court that the military medical system is there not just to treat our soldiers and their family, but also to create and improve, create and maintain high morale for the soldiers. That's what the whole purpose of this is about. It's also about to make sure that they receive complete, comprehensive medical care. Now, I understand... The system provides an extraordinary amount of process, right? Yes, it does. I mean, truly extraordinary, the number of hearings you get and the number of different filters and levels. Yes, it is. However... It's really unique almost. I've never seen a system that has as much level of assessment to make certain that everything is done carefully and properly. I agree that there is a system in place, but I believe the system in part is flawed because when we start from the beginning... I was just struck that, I mean, there's more process here for someone who's trying to enhance their payments for their disability than you have in the Department of Veterans Affairs for our combat veterans. In terms of the number of times the same issue gets reviewed over and over again, we get one shot at the BVA. True, you get one shot at the BVA, but you do get many... You get remands to be sure. But you also have the DRO option. You have your initial claim. You have the possibility... Don't let me interrupt your argument. I'm sorry. It's all right. Just simply put, comparing the two, I think they're fairly close. But the military process probably does have more. That being said, I understand that when the military comes up and the government comes up, they're going to be arguing that we've waived a lot of our arguments. However, we strongly disagree that all we've done is made separate arguments in support of the continuous claims that we've had before this court, which includes that they improperly rated him, that they gave him the wrong rating, that they did not consider all the conditions, and they didn't give him due process in the beginning. You kind of put your finger on the... We're looking for reversible error, right? Yes, sir. Get your thumb on the button and tell us exactly what happened here that is reversible error. Reversible error is the lack of treatment that they gave Dr. Diaz in initially assessing his MEB. For instance, they state that, well, since 2007, he's had this adjustment disorder. However, in their discussions, two years later, one, they failed to address the conflicting medical evidence that shows that he was diagnosed at one time by a psychologist showing that he had depression. Not adjustment disorder, but depression. Even if we were to put that argument aside and say, okay, well, since he's had this condition since 2007, he has adjustment disorder. But if he's had adjustment disorder that long, over six months, the DSM clearly shows that now he has a condition that is chronic, and that moves from adjustment disorder into depression. Third, in that particular case, and in actually many of the medical diagnoses throughout, we're relying back on an MEB in medical diagnosis that occurred back in 2007, two years prior, and the military regs clearly say that they are to be current. Well, what about the 2008 MEB report? I thought that was what was primarily relied on by the Air Force. I only understood them to look at the 2007 report to point to the fact that there were conditions that preexisted entry into the Air Force. Which in the… Is the 2008 not current enough? No, it's still a year away. And on top of that… How long away was it? I apologize. I think about a year, I want to say. I'm ballparking in my mind. I could be off by several months, but it's still over six months. So you're saying they can't rely on a medical report that is over six months old in assessing… My understanding is that's got to be relevant and recent within 30 to 90 months, not six months, two years, one year, whatever the case may be. But even so, they didn't… Well, first, in their decision with regards to what may be preexisting, they don't list and explain why these conditions are both unfitting, both preexisting, and any other that may have been exacerbated during his time in service. And according to the law, and I know it's stated in my brief, that you can't just say, well, just because, you have to give some actual reasoning behind so that we have an opportunity to refute or rebut any of the arguments that they've brought forward. And there lacks… I mean, granted, we don't need, normally, specificity, but we have no idea what they're talking about. I'm having difficulty following what you think is the reversible error. Is it their failure to compensate him for the diabetes and hypertension? Is it some sort of due process error that you don't believe they thoroughly enough addressed in the opinions or in their evaluations of him? Is it because they used a medical report that was too old? I mean… All of them. I feel like you're throwing stuff against the wall to see if anything will stick, but I don't understand the exact legal arguments that you're making. So, you're saying that they erred as a matter of law by using a report that was too old, that they had no right to use that. Correct, because the regulations state that they're to use current medical treatment. That they erred… Is there any evidence that there was a change in condition from the 2008 report that they used to the time at which they were making decisions? Yes. What evidence? The change of condition was his… Well, I mean, we're… I apologize, we're being a little loose with the term change. When he has a continuing condition, the same condition, and I'm referring to his mental health issue, if it's a continuing condition, if he's continuing to have adjustment disorder, that then no longer is adjustment disorder. That is a more severe mental health issue that should have been addressed by the board. If you still have a broken arm three years later… It's still a broken arm. That's right. It's still a broken arm, but within that time, you expect it to heal, not get worse. But it's still a broken arm. You have no evidence it got worse. You're saying he had adjustment disorder, and since he still had adjustment disorder, it should be something other than adjustment disorder because of the passage of time. Broken arm is still a broken arm three years later. In this particular situation, if I may, since we're all attorneys and judges and whatnot, we're not doctors. And the doctors state in the DSM that if you have adjustment disorder for over six months, it becomes a chronic condition, and guess what? You don't actually have adjustment disorder. You have something more severe. When they also… You asked me for what procedural errors they made. They made the error of saying, okay, many or most of these conditions that remain… He was not taking continuous medication for an adjustment disorder, but the condition is not compensable. Is that right? For adjustment disorder? The only mental disorder on record was adjustment disorder, and Mr. Diaz, the boy, was not taking continuous medication, and so there was a termination that was therefore not compensable with regard to that reg. Am I misunderstanding the reg? You're understanding the reg, but you're misunderstanding the science, the accepted science from the DSM. So if at the time he was first… If he was first diagnosed with adjustment disorder back in 2007, and that was the diagnosis, and he had the MEB and the PEB around that time, then I think we'd have a harder argument to make. Does your client have to shoulder a burden of showing that whatever the condition is that it makes him unfit for service? Does he have that burden? No. Well, in what situation, Your Honor? He wants to argue that he should have been relieved of active duty, right? Yes. Okay. You get relieved of active duty if you're unfit to serve? Yes. And what evidence was there here that his adjustment disorder made him unfit to serve? In other words, if it's not unfitting, it's not compensable, right? No, no, no, I understand, and actually I know exactly where I need to go. It was his commander that said that his various medical conditions without any specificity was creating a problem for command that made him unfit for service because he wasn't mobile. Who said that? It was his commander in his statement before the PEB. Can you find that in the record? Yes, I can. I'm required to do that in the rebuttal, so I'll need a second to do that. And they made a finding to that effect? They made a finding to that effect that the commander said that, you know, hey, he's unfit because of his various conditions. It's creating because he needs constant treatment, and we don't know exactly for what conditions it's making him unfitting. Now, granted, they can take a piece of paper from his whole medical record and say, see, he's got just 10 percent. But when you look at the whole record, 10 percent for his one condition. But when you look at the whole record, it's more than 10 percent, and it's more than just one condition. And when you… So you're arguing that these other conditions need to be shown, in which case there's entitlement to a rating of higher than 10 percent. Absolutely. And, I mean, the irony is, if a soldier was going to simply be discharged at the end of his term of service, he gets a full physical before he goes. Here, he didn't get a full complete physical, let alone a complete mental health exam, because nobody… he was never examined to determine why there was conflicting medical documentation showing that he had adjustment disorder versus what the one psychologist said, that he was suffering from depression versus his ongoing adjustment disorder, because you can't have adjustment disorder that long. That's what I'm trying to get at. Because they misapplied or didn't answer the question of the medical science, he was denied due process. You're into your rebuttal time. Do you want to save the remaining time? I'll save the remaining time if I may. And if you have a chance to find for us where… I know exactly where it is. I just got to find it real quick. May it please the Court. The government respectfully requests that this Court affirm the decision of the trial court below. The decision being challenged is a fitness determination. Mr. Diaz-Loboy was deemed unfit for military service due only to the one condition, stenosis. As a corollary to that, he was deemed fit with respect to all the other conditions with which he was diagnosed at the MEB. And Mr. Eisenberg just argued that… We're looking at page 20 of the appendix. Yes. It doesn't seem to say what Mr. Eisenberg said. Is this where we should be going? Well, page 20 is the formal PEB's report. As part of this process, as Judge Clevenger mentioned, there are four levels of review. So the initial process begins with some kind of referral by Mr. Diaz-Loboy's physician. Some medical issue has come up, and the referring physician initiates the process by referring it to a medical evaluation board. The medical evaluation board conducts a full physical examination of all conditions that could potentially be unfitting. So he's not just evaluated for the condition for which he was referred by the referring physician. He's evaluated for all potentially unfitting conditions. The MEB then makes a determination of whether he should be referred to the next stage in the process, the informal PEB, or whether he should be returned. He's evaluated for all possible conditions. Yes, he is. And that's part of the Air Force regulation. What about his depression, one that you ordinarily check off? If it's potentially unfitting, according to the Air Force regulation… Well, adjustment disorder is a… I'm not sure of the answer to that, but adjustment disorder is a special category because it's not a potentially unfitting condition. Categorically, the Air Force has decided that adjustment disorder, even if it renders a service member unfit, is not rateable or compensable. That is just categorically outside of the conditions for which he could be… Well, the reason why I asked was that the appellant's making quite a lot out of the argument that he thinks the fatal error, a big mistake here, was that there wasn't apparently a conceded determined adjustment disorder that persisted for a considerable period of time. Right. I think Mr. Eisenberg's argument is incorrect for several reasons, one of which is that his own evidence, which he submitted before the final stage in this process, the Secretary of the Air Force Personnel Board, is a document by Letitia something, a physician who ruled out, who diagnosed him, who said he had a history of adjustment disorder and ruled out a diagnosis of depression not otherwise specified. And I can get the language if I look at it, but it's something like adjustment disorder with depressed mood, ruling out depression otherwise specified. In other words, the depression diagnosis has expressly ruled out depression on its own. Well, I'm confused because I understood Mr. Eisenberg to be arguing that the main mistake here was that the examiners failed to appreciate that he might have had a depression because of the extended period of time during which he had a personality disorder. I think in part that's because the argument is confusing and I agree with you. Maybe you can find that place in the record and tell us later. I don't want to stop your argument. Oh, sure. If depression was expressly ruled out, it seems to undermine Mr. Eisenberg's primary argument here. Yes, and I'd be happy to do that. I just want to respond briefly to the point that the MEB was somehow too old to be relied upon and note that the initial MEB was convened on September 3rd of 2008. After several years in the process, the Secretary of the Air Force Personnel Board issued their final determination on April 16, 2009 after going through two stages of the informal physical evaluation board and the discharge was on April 16, 2009. I may have switched my date. So April 6th for the final determination and 10 days later was the discharge. And that is for the 2008 MEB. That's right. Not the 2007 report that Mr. Eisenberg originally... That's correct. And I just want to reiterate very quickly that... Was it problematic for the Air Force to use the 2007 report given the age of that report? For the limited purpose for which it was used, no. It was simply being used to say we have looked at these other conditions. We have looked at these other complaints. We know about them. We've determined that they do not render you unfit. You have not submitted any additional evidence to show us that something has changed since you were last deemed fit. And therefore, there's no evidence for us on which to base a conclusion that there is additional medical conditions that render the service member, in this case, unfit. Wouldn't the government expose itself to a challenge if it failed to look at the 2007 report? Can you imagine a situation where the 2007 report produces something that's blatantly inconsistent with the 2008 report that calls into question the 2008 report? Potentially. I think that the Air Force... That's what I'm trying to get at. Just because it's a year old or a couple of years old, I don't know that one would want... Even Mr. Eisenberg would want to say it's totally irrelevant because in some circumstances it might be helpful. Right, it might. And the Air Force does have an obligation to look at all of the relevant evidence. And it did so in this case. I don't quite understand the contention there. If that's all, I will look up the... If there are no more questions, I will sit down for a moment and look for the record site. Yeah, I want to expressly rule out depression. Thank you. Why don't you go ahead with your rebuttal while she's looking for that. Oh, okay. Simply give her the opportunity to provide the site. You were going to look something up? And I found it. If you look on page 8 of our opening brief, at the bottom, in particular, it says, on August 19th, the veteran's commander, Lieutenant Colonel Alfred J. Ozanian, submitted a memorandum to the MAV regarding the veteran's ability to meet the demands of military service. Lieutenant Colonel Ozanian explained that while the veteran was able to successfully, quote-unquote, function as a dentist on the base, end quote, his, quote-unquote, medical restrictions inhibit his ability to, quote, support other missions requirements. Colonel Ozanian recommended that the veteran be separated from service to ensure that a constant team of medical providers could manage his medical conditions. The colonel concluded that the expanded demands of military service were not consistent with the veteran's medical conditions. Now, not condition, conditions. Well, this is your language. This is not a quote. So, where is his language? Well, actually, if you, forgive me, if you go back to earlier where I mentioned, quote-unquote, this is cited, I believe, at appendix page 56. Doesn't it say medical condition and risks? Yes, it does, on page 57. And I didn't put an S on that in case. Then my apologies if we, quote-unquote, misquoted, but what is a medical condition? Well, your argument was that it was plural. Right. But, again, a medical condition can be one, first of all, he didn't identify the medical condition, and two, medical condition can mean more than just one symptom. Well, that wasn't your argument to the court a minute ago, counsel, at least as I understood it. Wait. Forgive me. What was not my argument? You were using an argument that the record at page 56 and 57, you cited at page 9 of your brief. Yes. That the memo from Lieutenant Colonel Ozanian referred to conditions, plural. Right. And you said that that exclusively indicated that he could not be solely referring to the stenosis condition. You said that there was a plural in there, and I don't see it. And, yes, Your Honor, I did acknowledge that it was misquoted. I'm not arguing with you on that, but the term medical condition, even then articulated by the colonel, can still mean more than one symptom. Well, when you acknowledge that it was misquoted, as far as I'm concerned, on that argument, you lost me. Okay. Final thought, counsel. Yes, I do, Your Honor. The opposing counsel has mentioned that there were times where my client did not, quote, unquote, bring forth additional medical documentation to be heard before the Board. It is not the onus of the military member who is earning a paycheck less than, if you will, in the private sector to go out and find additional medical supplemental information. All of this is supposed to be provided by the Conference of Medical Care. It's supposed to be provided by the military for all members of the military service and their spouses. Thank you for your time. Do you? Just let me ask you. I mean, your adversary is looking for this document where she says there was a medical record that ruled out depression. What is she talking about? Do you know the record? I'm not familiar with the record off the top of my head. You're not familiar with the record? Of course you're familiar with the record. No, I'm not. I'm sorry. I'm familiar with the record. I'm not familiar with that particular record, that specific quote. I can take a moment and look for it as well if it exists. But even if it does exist, it doesn't excuse that he's been having this condition for well over a year, well over six months, which means it was clearly a misdiagnosis. And if I may add to that, the military has a history, as we've seen plenty in the press, of deliberately downgrading mental health disorder. My most recent issues with regards to what occurred at Fort Madigan in Washington State. I mean, they no doubt start with it, but they say, you know, adjustment disorders don't count. Right, adjustment disorders. We don't care if you really misadjusted when you serve AM, right? I'm sorry, I didn't hear you. Well, I mean, an adjustment disorder is not debilitating. Correct, according to- So I'm just saying, you're saying, well, the military downplays mental conditions and whatnot. Right, but- We don't mind if everybody running around the base has an adjustment disorder. Right, but in the same- They're fixing the airplanes and whatnot. It's okay with us. Right, but if I may, in the same token, if we can get away from- If we, the military, can get away from PTSD and depression and say, it's really an adjustment disorder, that they downplay the severity of the mental health issue, then, yes, they've got to- I'm not denying- Right. No, no, I'm just making sure we're clear. Okay, Ms. Eisenberg, I think we have your argument. Ms. Kennedy, did you find the document? Well- If not, would you like to submit it to the court by letter by the end of the day? I could do that, Your Honor. I found it in the administrative record, but I'm having trouble locating it in the joint appendix. But it's part of the record below? Yes. Will you submit it to us? I will. And with a copy to your adversary. Absolutely. Thank you. You can do that promptly. Maybe today. I have it right here. Yeah, by the close of business. Thank you. All rise.